VALSOTOMIR MARKOVICH v. THE STATE.

No. 23717. Delivered June 25, 1947.
Appeal Dismissed on Motion of Appellant October 22, 1947.

*Sam W. Davis,* of Houston, for appellant.

*A. C. Winborn,* Criminal District Attorney, *E. B. Dugan* and *E. T. Branch,* Assistant Criminal District Attorneys, all of Houston, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of the offense of murder and his punishment was assessed at confinement in the state penitentiary for 99 years.

The record reflects that appellant and deceased, Frank Anthony were both young men who had been recently discharged from the Navy. They had been friends and neighbors for years. On the morning of August 17th, 1946, deceased, accompanied by appellant, came to the home of his mother and in her presence and in the presence of his uncle and appellant exhibited his billfold which contained $247.00 in currency. While at the home of deceased's mother, they expressed their intention of going hunting. The deceased owned a 22 caliber rifle and some ammunition. They left the home of deceased's mother with the rifle and ammunition for the purpose of going hunting. From the time they left on their hunting trip until six weeks later when the body of the deceased was discovered on the banks of Buffalo Bayou, he had not been seen. On the morning of the next day, appellant came to the home of deceased's mother and inquired for her son, Frank. Upon being told that her son had not returned, that she supposed he might have gone to Galveston, he, appellant, asserted that deceased had in fact gone to Galveston instead of going hunting. He then asked to borrow the deceased's rifle but was told that the deceased had not re-

turned the rifle. Some six weeks later a negro discovered a decomposed body on the banks of Buffalo Bayou partly covered with brush and leaves. On examination, the body revealed a small hole in the back of the head which had been made by a bullet, his trouser pockets were turned inside out. Some of the underwear (shorts) bore the name "Anthony, F." Soon after the body was found and was identified by the clothing and its identification marks, appellant was arrested and while in custody and under arrest, he made two confessions, one verbal and the other in writing, in which he admitted killing the deceased by shooting him in the back of the head, robbing him of his billfold and money and then throwing the rifle and billfold into the bayou. As a result of the information which he gave to the officers, the bayou was searched by divers at the place indicated by him and the rifle and billfold were recovered.

Appellant did not testify. His sole defense was insanity at the time of the commission of the offense as well as at the time of trial, which he supported by the testimony of certain witnesses. The State's evidence on the subject was to the contrary. Thus it will be noted that an issue of fact was raised which the jury decided adversely to him.

Appellant brings forward six bills of exception in which he claims that the trial court erred. By Bill of Exception No. 1 he complains because the trial court permitted the district attorney to propound to each prospective juror on voir dire examination touching his qualification, the following question: "Would you be influenced by the fact alone of defendant's service in the Navy?, and unless the juror answered "No" to the question, he was challenged for cause, the challenge was sustained by the court and the juror excused. Appellant, by and through his counsel, objected thereto on the ground that it would prevent the jury giving consideration to the sole theory of insanity caused or aggravated by war training and experience. The court overruled the objection. Appellant asserts in his bill that he then inquired of each such juror if he would consider the fact of defendant's Navy service along with all other relevant facts, to which the State objected and which objection was sustained by the court.

The trial court qualified the bill and in his qualification states that he did permit the State to ask the prospective jurors on their voir dire "would you be influenced by the fact alone of defendant's service in the Navy?", that when the prospective juror replied in the affirmative, showing a bias in the case, the

court sustained the State's challenge for cause. The court further states that he cannot certify that the State made any objection to the inquiry by appellant's attorney of any of the prospective jurors whether they would consider the fact of defendant's Naval service along with all other relevant facts. Appellant accepted the bill as qualified and is bound thereby. It is our opinion that the court was justified in sustaining the State's challenge for cause of a juror who answered that he would be influenced in arriving at a verdict by the fact alone that the accused had served in the Navy. This disclosed a bias in favor of the accused. The mere fact that a person served in the Army or Navy does not excuse or justify murder. However, since the court declined to certify that the State made any objection to the form of the interrogatory propounded by appellant's attorneys to any of the prospective jurors as asserted by him in the bill, we are of the opinion that the bill fails to disclose any error. Furthermore, the bill is deficient, in this, that it fails to show what the answers by the prospective jurors would have been.

By Bill of Exception No. 2 he complains of the admission in evidence of his confessions made to the officers in conformity with the law. He objected to their admission in evidence on the ground that the officers had carried him handcuffed to a windmill in an adjoining county and threw the chain attached to the handcuffs over a brace and pulled him up by the chain and left him suspended. While in such condition, they struck him on the abdomen until he made the confessions.

We have searched the record but find no testimony to support such contention. The officer to whom the confessions were made was interrogated relative to the matter by appellant's counsel, who strenuously denied having done so. He testified that he did not know where the claimed windmill was; that appellant at no time was taken into an adjoining county. Appellant's mother testified that the next morning after his arrest she went to see him at the jail and she noticed that his wrists were red. This may have been due to the fact that the officers had placed handcuffs on him when they took him to the bayou where he showed them where he had thrown the rifle. If the officers had pulled him up by the handcuffs as he now claims, it probably would have cut the skin and not just caused his wrists to become red. However, the officers denied having mistreated him in any manner. Under the facts as disclosed by the bill, it fails to reflect any error.

By Bill of Exception No. 3 he complains because the court

declined to heed his request for an instruction to the jury to the effect that if they believed from the evidence that he, appellant, was insane at the time he made the alleged voluntary confessions or if they had a reasonable doubt thereof, then they should not consider the confessions for any purpose. If any evidence had been introduced that at times he was insane and at times he had lucid intervals, then such a charge might have been required, but in the instant case, appellant's theory, finding support in the evidence, is that he was insane at the time of the commission of the offense and at all times since then, while the State's theory, finding support in its evidence, is that he was sane at all times up to and including the time of his trial. The trial court submitted the issue of his insanity at the time of the commission of the offense as well as his insanity at the time of the trial to the jury who found against appellant on both issues. If he was sane at both periods of time with no evidence of intermittent insanity, we find no evidence raising the issue sought to be submitted in the requested instruction. The presumption obtains that he was either insane or sane at all times. The jury found him sane at the time of the commission of the offense as well as at the time of his trial, therfore, no injury resulted to him by the court's action in declining to give the requested charge.

By Bills of Exception Nos. 4 and 5 he claims that the court erred in the following respects: First, in admitting in evidence the alleged voluntary confessions because the same were extorted from him by the use of force, threats, and duress. Second, that the court erred in declining to submit to the jury the question of whether or not the confessions were illegally obtained as claimed in Bill of Exception No. 4. We have searched the record carefully but find no evidence that the officers to whom the confessions were made used any force or inflicted any punishment upon him in order to compel him to make the confessions.

The mere fact of propounding questions to the officers which assumed that they used force, duress, etc., and which interrogatories are answered in the negative does not raise the issue so as to exclude the confessions or submit such issue to the jury. See Thumm v. State, 24 Tex. App. 667 (703) ; Miller v. State, 27 Tex. App. 63; Hooper v. State, 29 Tex. App. 614; Hastings v. State, 32 Tex. Cr. R. 372; and Houston v. State, 34 Tex. Cr. R. 587.

Finding no reversible error, the judgment of the trial court is affirmed.

Opinion approved by the Court.

HAWKINS, Presiding Judge.

Conviction is for murder, punishment assessed at 99 years in the penitentiary.

The judgment was affirmed in an opinion handed down on June 25, 1947. Within the time permitted appellant filed a motion for rehearing. Pending this motion appellant now files his personal affidavit advising this court that he does not desire to prosecute his appeal, and at his request the same is dismissed.